UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENYS SVENIN,<br><br>         Petitioner,<br><br>v.<br><br>JEREMY CASEY, Warden of Imperial Regional Detention Facility, and U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>         Respondents. | Case No.: 3:25-cv-01865-CAB-KSC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[Doc. No. 1] |

On July 21, 2025, Petitioner Denys Svenin filed a petition for a writ of habeas corpus against Respondents Jeremy Casey, Warden of Imperial Regional Detention Facility ("IRDF"), and the U.S. Department of Homeland Security ("DHS"). On July 25, 2025, the Court ordered Respondents to file a response to Petitioner's habeas petition, which they did on July 30, 2025. [Doc. No. 5.] The Court finds this case suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons below, the Court **DENIES** the petition.

### I. BACKGROUND

Petitioner, proceeding pro se, is a Ukrainian national that lawfully entered the United States pursuant to humanitarian parole along with his wife and daughter on April 28, 2024.

[Doc. No. 1 at 1; Doc. No. 8 at 2.] He says that on January 30, 2025, due to a GPS mistake, he accidentally drove across the U.S.-Mexico border in Calexico, California. [Doc. No. 1 at 1.] When he turned back and attempted to re-enter the United States, he was detained by immigration officials at the border processing facility. [*Id.*] Respondents allege that Petitioner's parole status automatically terminated upon his departure from the United States and that when he sought to re-enter, immigration officials determined he was inadmissible under 8 U.S.C. § 1182(a)(7)(i)(I) as an immigrant not in possession of a valid entry document. [Doc. No. 8 at 2.] Subsequently, Petitioner was issued a "Notice and Order of Expedited Removal under section 235(b)(1) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1225(b)(1)." [*Id.* at 2–3.]

On February 3, 2025, Petitioner was received into Immigration and Customs Enforcement ("ICE") custody at IRDF. [Doc. No. 8-1 at 2.] On February 10, 2025, ICE considered paroling Petitioner pursuant to 8 U.S.C. § 1182(d)(5), which "provides discretionary authority to parole for significant public benefit or urgent humanitarian reasons[,]" but declined to do so. [Doc. No. 8 at 3.] On May 23, 2025, and July 2, 2025, pursuant to 8 U.S.C. § 1225(b)(1)(B), a U.S. Citizenship and Immigration Services asylum officer interviewed Petitioner "to determine whether he had a credible fear of persecution [or] torture if removed to Ukraine." [*Id.*; *see also* Doc. No. 1 at 1.] In both instances, the officer rejected Petitioner's asylum claim. [*See* Doc. No. 8 at 3; *see also* Doc. No. 1 at 1.] On July 9, 2025, an immigration judge affirmed the asylum officer's rejection and "returned the matter to [DHS] for execution of the expedited order of removal to Ukraine." [Doc. No. 8 at 3.]

Petitioner seeks the following forms of relief from the Court: (1) restoring his humanitarian parole, (2) granting him temporary protected status, (3) releasing him on bond, (4) prohibiting his transfer to another place of detention, (5) confirming his right to voluntarily depart to a third country, and (6) immediate release from custody.

## II. DISCUSSION

28 U.S.C. § 2241 states that a federal district court may grant a writ of habeas corpus if the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States[.]" Petitioner bears the burden of demonstrating his detention is unlawful. *See Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In . . . federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) (holding that the burden of proof under § 2241 is on the petitioner). The petition "must . . . specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Davydov v. Casey*, No. 25-CV-845-RSH-AHG, 2025 WL 2042355, at *3 (S.D. Cal. July 21, 2025) (quoting Rule 2(c) of Rules Governing Section 2254 Cases in the U.S. District Courts).

Petitioner asserts that his now-seven-month detention is unlawful because there is no "realistic prospect of [his removal.]" [Doc. No. 1 at 2.] He also argues that as a civil immigration detainee he is being held with criminals, which is purportedly unlawful. [*Id.*] Finally, he states that he sought and was denied voluntary departure to a third country, and that his credible fear interview was conducted with administrative procedure violations. [*Id.* at 3.]

**A. Termination of Parole**

8 C.F.R. § 212.5(e)(1)(i) states that "[p]arole shall be automatically terminated without written notice upon the departure from the United States of the alien[.]" Even if unintended, Petitioner's departure from the United States on January 30, 2025, automatically terminated his parole status. *See U.S. v. Ortiz-Diaz*, 849 F. Supp. 734, 737 (E.D. Cal. 1994) ("The government may terminate parole automatically without written notice to the alien if the alien departs from the U.S."). As such, when he presented himself to immigration officials to re-enter the United States, Petitioner was an applicant for admission without valid documentation pursuant to 8 U.S.C. § 1225(b)(1) and subject to expedited removal.

### B. Length of Detention

Petitioner's final order of removal was entered on July 9, 2025. [Doc. No. 8 at 8.] After a final order of removal, "the Government ordinarily secures the alien's removal during a subsequent 90-day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). Further detention is authorized "if the Government fails to remove the alien during those 90 days[,]" but it is limited "to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 682, 689. The Supreme Court has found six months to be a presumptively reasonable period. *Id.* at 701. As of the date of this order, Petitioner has been detained for three months post-final removal order. Accordingly, Petitioner's challenge to his detention based on its length is premature.

### C. Detention with Criminals

Petitioner alleges he is in "custody with people who have committed different crimes" and that it is "prohibited to hold non-criminals in conditions for criminals." [Doc. No. 1 at 2.] He cites *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003) for this principle, but the case does not relate to his assertion. In *Ly*, the Sixth Circuit held that removable criminal aliens may be detained without bond "for a reasonable period of time required to initiate and conclude removal proceedings promptly" and that "[w]hen actual removal is not reasonably foreseeable, deportable aliens may not be indefinitely detained without a . . . 'strong special justification[.]'" *Id.* at 273. Petitioner provides no support for his argument.

To be sure, "noncitizens subject to civil immigration detention . . . cannot be subjected to conditions that amount to punishment." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (N.D. Cal. 2024) (internal quotation marks omitted) (citing *Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004)). But Petitioner does not allege that the conditions at IRDF are such that he is being punished like a criminal detainee—only that he is detained with

individuals who have committed crimes.[1]  The Court finds that this is not a basis for which to grant Petitioner a writ of habeas corpus.

### D. Voluntary Departure

Petitioner states that he "requested voluntary departure to a third country . . . but [] was denied." [Doc. No. 1 at 3.]  Under 8 U.S.C. § 1229c(a)(4), "arriving noncitizens are not eligible for voluntary departure[.]" *Immigrant Defs. L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 21-CV-00395 FMO-RAO, 2025 WL 1191572, at *11 (C.D. Cal. Mar. 14, 2025) (citing 8 U.S.C. § 1229c(a)(4)); *see also Wen Zhong Li v. Lynch*, 837 F.3d 127, 130 (1st Cir. 2016) (finding petitioner "ineligible for voluntary departure because he was an arriving alien").  As an arriving noncitizen, or alien, Petitioner is not entitled to voluntary departure.

### E. Credible Fear Interview

Petitioner alleges that the English–Russian interpreter in his credible fear interview "did not confirm his level of English language proficiency, which is contrary to the qualification requirements set out in 8 C.F.R. § 208.30(d)" and "created a risk of misinterpretation." [Doc. No. 1 at 3.]  He also alleges that he was rushed by the interviewer and could not "fully stat[e] the basis for [his] fear." [Doc. No. 1 at 3.]  Though he does not specify what relief he seeks based on these allegations, the Court presumes that Petitioner seeks re-adjudication of his asylum application.

Regarding interpretation, 8 C.F.R. § 208.30(d)(5) states that the asylum officer "shall arrange for the assistance of an interpreter in conducting the interview" if need be, and that the "interpreter must be at least 18 years of age" and may not be, *inter alia*, the alien's attorney, representative, or witness.  There is no mention of the interpreter being required to specifically confirm his English proficiency to the petitioner.  Moreover, Petitioner does not even allege that the interpreter failed to interpret properly during the interview.  Finally,

---

[1] Petitioner does complain of the conditions at San Luis Regional Detention and Support Center in Arizona where he was previously held. [Doc. No. 1 at 1.]  However, he is now in custody at IRDF, lists its Warden as the Respondent to his petition, and does not challenge the conditions at IRDF.

issues with the time provided to Petitioner during his interview to state the basis for his fear would not entitle Petitioner to release, and a habeas petition is not the appropriate means by which to seek another opportunity to apply for asylum. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 118 (2020) (finding petitioner's requested relief of "a fair procedure to apply for asylum" to be "outside the scope of the common-law habeas writ").

### F. Transfer of Petitioner

Petitioner seeks to prohibit his transfer to another place of detention because it would allegedly interfere with access to counsel, constitute forum shopping, and could worsen his current condition. [Doc. No. 1 at 4.] Petitioner cites *Devitri v. Cronen*, 289 F. Supp. 3d 287 (D. Mass. 2018) but misstates its holding, and the Court finds it is not relevant to his argument. Courts typically enjoin the Government from transferring detainees out of the district during the *pendency* of the habeas proceedings. *See, e.g.*, *Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2430495, at *4 (N.D. Cal. Aug. 22, 2025) ("Respondents are [enjoined] from transferring Petitioner out of this district or deporting her pending these habeas proceedings."). This order, however, concludes Petitioner's habeas proceeding. Moreover, Petitioner has been in custody at IRDF since June 26, 2025 and does not allege any actions by Respondents indicating that they intend to transfer him. Accordingly, the Court declines to enjoin a potential transfer of Petitioner at this time.

### III. CONCLUSION

As Petitioner fails to demonstrate that Respondents are holding him in custody unlawfully, the Court **DENIES** his petition for writ of habeas corpus without prejudice. Should Petitioner's post-final removal order detention continue beyond six months without a reasonable likelihood of removal, he may choose to re-file his petition.

It is **SO ORDERED**.

Dated: October 14, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge